**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ANDY ELLIS, JR.**                                                                                                  **PLAINTIFF**

**v.**                                                           **No. 1:23-cv-00060-MPM-DAS**

**SPECIALTY ORTHOPEDIC GROUP
OF MISSISSIPPI, PLLC, et al.**                                                            **DEFENDANTS**

**ORDER**

This cause comes before the Court on the Motion for Judgment on the Pleadings [54] filed by Defendant North Mississippi Medical Center ("NMMC") and joined by Defendants Nathanael Eisenhut, D.O., Relias Hospitalist Medicine Specialists of Tupelo, LLC ("Relias Hospitalist"), Misty Rea, M.D., Relias Emergency Medicine Specialists of Tupelo, LLC ("Relias Emergency"), Specialty Orthopedic Group of Mississippi, PLLC ("SOG"), and David Andrew Vecchione, M.D. The plaintiff has responded in opposition to the motion [58], and the Court, having considered the memoranda and submissions of the parties, is now prepared to rule.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

In early 2021, Andy Ellis consulted Dr. Andrew Vecchione at Specialty Orthopedic Group of Mississippi, PLLC for treatment of his lower back pain. After trying several different approaches without success, Dr. Vecchione recommended that Ellis undergo a trial placement of a Medtronic spine stimulator. Ellis had the procedure on April 8, 2022, and was discharged with instructions to contact SOG if the incision demonstrated signs of infection, redness, swelling, pain, fever, chills, or weakness.

After the procedure, Ellis began experiencing severe back pain, fever, vomiting, and difficulty moving. He reported these symptoms to SOG, as instructed, but was assured that such

1

complaints were not cause for alarm. By the time Ellis arrived at SOG for his follow-up appointment on April 15, 2022, his pain was so severe that he was unable to stand. Ellis reiterated his worsening symptoms to Dr. Vecchione and his staff, but he was again told that such symptoms were normal. The redness and swelling of the surgical site were attributed to heat rash, and Dr. Vecchione advised Ellis that fever and nausea were to be expected. The Medtronic simulator leads were removed, and Ellis was discharged home.

Over the next few days Ellis's condition continued to deteriorate and, by April 18, 2022, he was unable to move his legs. That night, Ellis was transported to North Mississippi Medical Center via ambulance and arrived in the emergency room at 10:30 PM. Though Ellis was evaluated by a graduate nurse at 12:51 AM, he was not evaluated by a physician until Dr. Misty Rea assessed him at 1:44 AM. Dr. Rea noted that the plaintiff's bloodwork showed signs of infection and that his spine would require radiologic evaluation. Despite these findings, Dr. Rea neither administered antibiotics nor requested the necessary imaging.

After nine hours in the emergency room, Ellis was transferred to observation status under the care of Dr. Nathaniel Eisenhut, but he still had not received any treatment other than pain medication. Sometime after 7:30 AM on April 19, an MRI of Ellis's spine was ordered for the first time. The plaintiff finally had an MRI on April 20, which revealed a spinal epidural abscess and spinal cord compression. Though Ellis had surgery the following day to relieve the pressure on his spine, he now suffers from permanent lower extremity paralysis, bowel incontinence, and bladder incontinence.

Based on these alleged facts, Ellis brought suit asserting that the defendants' acts violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 14 U.S.C. § 1395dd, and amounted to medical negligence actionable under state law. Specifically, the plaintiff argues that

"[d]ue to the unacceptable delay in diagnosis, management, and treatment of Plaintiff's spinal epidural abscess, including NMMC's failure to appropriately screen and stabilize Plaintiff pursuant to the requirements of EMTALA, Plaintiff now suffers from permanent lower extremity paralysis and incontinence." [59] at 4; [8] at 13. NMMC moved for dismissal arguing that the Amended Complaint does not state an EMTALA claim upon which relief may be granted and that this Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for evaluating Rule 12(c) motions for judgment on the pleadings is identical to that of Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor" and "rarely granted." *Brown v. Phoenix Life Ins. Co.*, 843 F. App'x 533, 538-39 (5th Cir. 2021). The complaint cannot be dismissed so long as it states a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. *Id.* Though a "formulaic recitation of the elements" will not suffice, Rule 8 "does not require detailed factual allegations." *Id.* So long as the plaintiff's complaint "raise[s] a right to relief above the speculative level," it will survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3

**ANALYSIS**

NMMC argues that the plaintiff has failed to state a claim under either the EMTALA's "adequate screening" requirement or its "stabilization" requirement. As to the former, NMMC asserts that "[b]ecause the complaint fails to allege that NMMC treated Ellis differently from similarly situated insured patients, it fails to state a viable claim for violation of the adequate screening requirement." [55] at 6. Additionally, NMMC argues that the plaintiff's eventual admittance to the hospital as an inpatient fulfilled the hospital's obligations under the EMTALA and, thus, bars recovery under the statute.

The EMTALA requires hospitals[1] accepting federal Medicare funds to provide "appropriate medical screening" and "stabilization" to patients presenting with an emergency medical condition. 42 U.S.C. § 1395dd. Enacted to prevent the practice of refusing treatment to indigent patients, the EMTALA "was not intended to be used as a federal malpractice statute." *Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998). Instead, its purpose is to ensure all patients receive the same treatment, regardless of insurance status.

Under the EMTALA, patients requesting an examination must be provided an appropriate medical screening to determine whether an emergency medical condition exists. 42 U.S.C. § 1395dd(a)-(b). Though not defined by the Act, the Fifth Circuit has held that an "appropriate screening examination" is one "that the hospital would have offered to any other patient in a similar condition with similar symptoms." *Guzman v. Mem'l Hermann Hosp. Sys.*, 409 F. App'x 769, 773 (5th Cir. 2011). The plaintiff bears the burden of demonstrating that he was treated differently from other patients, which may be done in one of three ways:

> (1) the hospital failed to follow its own standard screening procedures; or (2) there were differences between the screening examination that the patient received and examinations that other patients with similar symptoms received at the same

---

[1] Defendants do not dispute that NMMC is a hospital/emergency department covered by the EMTALA.

4

> hospital; or (3) the hospital offered such a cursory screening that it amounted to no screening at all.

*Fewins v. Granbury Hosp. Corp.*, 662 F. App'x 327, 331 (5th Cir. 2016).

NMMC first argues that the plaintiff's screening claim fails because Ellis did not allege that he was treated differently from similarly situated insured patients. In support, NMMC states that the plaintiff's "allegation that NMMC failed to provide the screening procedures normally provided to similarly presenting patients is merely conclusory," and, thus, "not sufficient to satisfy Rule 8 and state a claim." [55] at 7. This Court disagrees.

The plaintiff has provided sufficient facts to demonstrate he was treated differently from other patients, as required to state a claim. First, Ellis asserts that Dr. Rea's evaluation three hours after his presentation to the hospital was a "cursory review of Plaintiff's significant symptomology [and] was not an appropriate medical screening examination within the context of EMTALA," which falls into the third category described in *Fewins*. [59] at 8. In support, the plaintiff states that Dr. Rea noted that Ellis showed signs of infection and that his spine required radiologic evaluation, but neither was acted upon. Instead, nothing was done during the nine hours Ellis remained in the emergency department. Furthermore, the plaintiff also alleged that NMMC "failed to comply with its own screening policies and procedures as were to be followed with patients with similar signs and symptoms thereby resulting in disparate treatment being provided by Defendant NMMC to Andy Ellis Jr.," which is consistent with the first *Fewins* category. [8] at 17.

Because the plaintiff asserts allegations of disparate treatment premised on NMMC's cursory screening and/or its failure to adhere to its screening guidelines, Plaintiff states a valid EMTALA screening claim.

Next, NMMC argues that the plaintiff's screening claim is precluded because of Ellis's eventual inpatient admission saying, "The purpose of the screening requirement is obviously

satisfied if emergency department personnel perform diagnostic procedures that lead to the determination to admit the person to the hospital as an inpatient for further evaluation and treatment." [55] at 7. In support, the defendant cites a Seventh Circuit case holding that the hospital satisfied its EMTALA obligations by admitting the patient. This Court declines to follow this approach and instead rules consistent with other District Courts in this Circuit, which have found that "a correct diagnosis and admission to a hospital does not end an EMTALA screening inquiry." *Cervantes v. Tenet Hosps. Ltd.*, 372 F. Supp. 3d 486, 493 (W.D. Tex. 2019) (citing *Guzman v. Mem'l Hermann Hosp. Sys.*, 637 F. Supp. 2d 464, 482 (S.D. Tex. 2009)). Accordingly, the plaintiff's claim is not barred by his admission to the hospital, and the plaintiff has stated a plausible EMTALA screening claim. In so finding, this Court considers it unnecessary to evaluate whether the plaintiff has also stated a claim under the Act's stabilization requirement.

Defendants SOG, Vecchione, Rea, Relias Emergency, Eisenhut, and Relias Hospitalists joined in NMMC's motion incorporating by reference the arguments therein and, therefore, also fail. In addition to the grounds asserted in NMMC's motion, defendants Eisenhut, Relias Hospitalist, Rea, and Relias Emergency argued that "Plaintiff cannot state an EMTALA claim against [them] because EMTALA claims are limited to actions against participating hospitals, not individual physicians." [56] at 2; [63] at 2. The amended complaint, however, appears to bring EMTALA claims against only NMMC and SOG. Nonetheless, the plaintiff has not responded to the contrary and, thus, concedes the point. Accordingly, EMTALA claims against Eisenhut, Relias Hospitalist, Rea, and Relias Emergency individually, if any, are dismissed.

## **CONCLUSION**

At this stage in the proceedings, the plaintiff provided sufficient facts to state a valid EMTALA claim. Surviving dismissal does not require detailed factual allegations – the plaintiff

need only state a claim for relief that is plausible on its face, and he has done so here. Reading the amended complaint in a light most favorable to Ellis and drawing all reasonable inferences in his favor, as required at this stage, the Court finds that the plaintiff has sufficiently pled a cause of action under EMTALA. Accordingly, the defendant's motion is denied, and this Court will continue to exercise jurisdiction over the plaintiff's claims.

**IT IS HEREBY ORDERED** that Defendant NMMC's Motion for Judgment on the Pleadings [54] is **DENIED**.

**SO ORDERED** this the 15th day of May, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**