**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ANDY ELLIS, JR.**                                                                                                           **PLAINTIFF**

**v.**                             **No. 1:23-cv-00060-MPM-DAS**

**DAVID ANDREW VECCHIONE, M.D.;
MEDTRONIC, INC.; JOHNATHAN BENNETT;
and JOHN DOES 1-10**                                                           **DEFENDANTS**

**ORDER**

This matter comes before the Court on Plaintiff Andy Ellis, Jr.'s Appeal [374] of United States Magistrate Judge David A. Sanders' order striking his September 10, 2025, rebuttal and supplemental expert designations, on his Motions to Stay [377], [381], and his Motion for Oral Argument [378]. Defendant Dr. Vecchione has also filed a Motion to Strike Plaintiff's October 25, 2025 expert supplementation [382]. Lastly, Defendants Medtronic, Inc., and Jonathan Bennet filed a Motion for Leave to Exceed Page Limit [380] for their forthcoming summary judgment motion. The Court has reviewed the parties' submissions and the record and is prepared to rule.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case concerns the allegedly negligent diagnosis, management, and treatment of Mr. Ellis' spinal epidural abscess ("SEA") following implantation of a Medtronic spinal cord stimulator in April 2022. A February 2024 CT scan of Mr. Ellis' lumbar spine documented thickened nerve roots consistent with chronic arachnoiditis. Mr. Ellis produced the CT report and images in June 2025, prior to Defendants' expert designations. [335] at 18. Defendants' own designations identified the February 2024 CT as material their experts reviewed in forming their opinions, although none of their experts addressed the arachnoiditis findings that appear in that scan. [374] Exs. 2, 3. Defendants later argued that Mr. Ellis' treating neurologist and radiologist

could not opine on the February 2024 CT because those opinions were not presented in Mr. Ellis' initial designations.

Mr. Ellis designated experts on May 6, 2025. Defendants designated experts on August 11 and 12. On September 10, Mr. Ellis served a rebuttal and supplemental designation that included arachnoiditis-related opinions from his treating neurologist, Dr. Parsioon, and treating radiologist, Dr. Kedzierski. The submission also included rebuttal opinions from Drs. Parsioon and Smith responding to ten of Defendants' expert opinions on subjects unrelated to arachnoiditis, a corrected damages calculation from Dr. Brister, and newly designated experts Drs. Kedzierski, Bingham, and Archer. Defendants characterized the arachnoiditis opinions as a new causation theory that departed from Mr. Ellis' original mechanical-compression theory. The Magistrate Judge accepted that view and struck the entire September 10 submission after concluding that it introduced new and untimely opinions. Mr. Ellis appealed and moved to stay the case. Defendants Medtronic, Inc., and Jonathan Bennet opposed the stay. Dr. Vecchione later filed a separate Motion to Strike Mr. Ellis' October 25 supplementation, which included additional medical literature and an October 23 office note authored by Dr. Parsioon relating to arachnoiditis.

## II. STANDARD OF REVIEW

"A party aggrieved by a magistrate judge's ruling may appeal the ruling to the assigned district judge." L.U. Civ. R. 72(a)(1)(A). The Local Rules provide, in pertinent part, as follows:

> No ruling of a magistrate judge in any matter which he or she is empowered to hear and determine will be reversed, vacated, or modified on appeal unless the district judge determines that the magistrate judge's findings of fact are clearly erroneous, or that the magistrate judge's ruling is clearly erroneous or contrary to law.

L.U. Civ. R. 72(a)(1)(B). Similarly, 28 U.S.C. § 636(b)(1)(A) provides that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that

2

the magistrate judge's order is clearly erroneous or contrary to law."[1] The "clearly erroneous" standard requires that the Court affirm the decision of the magistrate judge unless "on the entire evidence [the Court] is left with a definite and firm conviction that a mistake has been committed." *See States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); see also Fed. R. Civ. P. 72(a). This standard of review is "extremely deferential" to the magistrate judge's order. *See Sims v. Denmark*, 2014 WL 2573663, at *1 (S.D. Miss. Jul. 21, 2014) (citations omitted).

### III. DISCUSSION

The Court writes with the candor the circumstances now demand. Discovery is intended to advance the truth, not obstruct it. When a party engages in deception or willfully disregards its obligations, exclusion is warranted. No such bad faith appears here. The record instead reflects a level of collective neglect that has distorted the expert submissions and delayed meaningful progress in this litigation.

The February 2024 CT report documented "mild thickening of few lumbar roots, can be seen with chronic arachnoiditis." [374] Ex. 4 at 1. That finding was not obscure. The arachnoid membrane may be thin and web-like, but the arachnoiditis indicated here was neither subtle nor difficult to perceive. Yet the parties proceeded with their own theoretical webs of argument sans analysis of the arachnoiditis.

The treating neurosurgeon who ordered the scan did not mention arachnoiditis in his initial report and did not appreciate its significance until more than a year later. Defendants' experts had received the same report months before their disclosures, yet they likewise remained silent. Oversight of this kind by a treating physician is troubling. The same oversight by multiple retained

---

[1] Pursuant to the authority granted it by Congress, the Court has designated magistrate judges to hear and determine pretrial matters not dispositive of a party's claim or defense. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L.U. Civ. R. 72(d).

experts is unacceptable. The Court expresses no view on which causation theory will ultimately prevail but must observe that the record as it stands reflects a failure by all involved to confront the most consequential medical fact in the case.

The Magistrate Judge responded to these late-surfacing issues by striking Mr. Ellis' September 10 submission in its entirety. That decision is understandable. The sweeping exclusion, however, created its own distortion. It removed rebuttal and supplemental opinions that were timely, narrow, and permissible under Rule 26(e), including Dr. Smith's responses to ten defense experts and Dr. Brister's corrected damages calculations. Excluding those opinions removed relevant material without improving accuracy in the record.

The order also swept in newly listed experts Drs. Bingham, Cowen, and Archer without determining whether their opinions constituted true rebuttal, valid supplementation, or undisclosed new matters. Rule 26(e) permits supplementation when a party "learns that in some material respect the disclosure or response is incomplete or incorrect," and the Fifth Circuit treats exclusion as an "extreme sanction" reserved for failures that cannot be substantially justified or rendered harmless. *See* Fed. R. Civ. P. 26(e); *Geiserman v. MacDonald*, 893 F.2d 787, 791-92 (5th Cir. 1990). A categorical striking prevented proper evaluation of each expert's role and deprived the Court of the ability to assess whether the opinions responded to Defendants' disclosures, corrected incomplete information, or addressed subjects left open in the original designations. The Court therefore declines to enforce the full reach of the Magistrate Judge's ruling and remands for clarification of the proper scope of each expert's testimony.

The parties devoted significant time and considerable resources to marginal disputes while the core question remained unexamined. The record lacks a reliable account of whether arachnoiditis pre-existed, coincided with, or resulted from the SEA. This gap undermines confidence in the

expert records and leaves the Court without the reliable foundation needed to evaluate the competing claims. Numerous experts produced detailed opinions that do not address a finding that appears, at first blush, to be a potentially determinative medical fact. The integrity of the record suffers when such a fact is left unexamined. Indeed, the arachnoiditis issue may be determinative. As such, it should be further considered, rather than excluded.

The Magistrate Judge attempted to keep this case on course by striking the belated expert submissions, and the Court understands that effort. Strict adherence to procedural deadlines, however, should not shield the parties from the consequences of their own oversights. When all bearing a duty to address a controlling medical fact failed to do so, the proper remedy is correction rather than exclusion. The Federal Rules of Evidence in particular, are designed to achieve fairness in every proceeding "to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102.

Federal Rule of Civil Procedure 37(c)(1) provides that a party who fails to disclose information or to identify a witness as required by Rule 26(a) or (e), may not use that information or witness unless that failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also Cooper v. Meritor, Inc.*, 2020 WL 5765004, at *3 (N.D. Miss. Sept. 28, 2020) ("it is appropriate to strike or exclude from consideration supplemental expert reports which are filed after the expert disclosure deadline and which amount to new opinions."). The Magistrate Judge treated the September 10 designations as new opinions and therefore applied the four-factor test set forth by the Fifth Circuit in *Geiserman v. MacDonald*, to determine whether those new opinions were substantially justified or harmless. 893 F.2d at 791. This Court reaches a different conclusion. The February 2024 CT findings have long been in the record and were identified by Defendants'

experts. The omission lies not in the belated introduction of a new theory, but in the parties' shared failure to address a fact already present.

This Court is reminded of remarks once delivered in Oxford by the late Professor Walter Dellinger, formerly of the University of Mississippi School of Law. Professor Dellinger, an admirer of Abraham Lincoln, repeated a story recounted by Paul Carrington,[2] that as an attorney Lincoln was beloved by trial judges for his ability to sift through the chaff and identify the critical facts truly determinative of his case. Particularly, Lincoln was remembered for conceding facts when they were not essential to his case or when they were not determinative of the ultimate question. More importantly, he would state to the tribunal that even if the other facts were found against him, if he could prove that the pig was stuck under the railing,[3] then his side must prevail. In other words, Professor Dellinger said that Abraham Lincoln always knew which fact or point of law was critical to his case.[4]

The parties instanter have invested substantial time briefing and preparing extensive and expensive expert submissions, yet they allowed months to pass without confronting a critical piece of medical evidence. They couldn't see the pig stuck under the rail. That omission falls short of

---

[2] *See* Paul D. Carrington, *A Tale of Two Lawyers*, 91 Nw. U. L. Rev. 615 (1997).
[3] With apologies to the reader, I briefly refer to the story of Abraham Lincoln stopping to rescue a pig stuck beneath a rail in the mud. This legendary tale is woven into the fabric of our national history. *See* Silas G. Pratt, *Lincoln in Story: The Life of the Martyr-President Told in Authenticated Anecdotes* 47-49 (1904).
[4] Professor Dellinger had a remarkable career, serving as Acting Solicitor General and Assistant Attorney General of the United States. He was also a member of the faculty of Duke Law School and served as Acting Dean from 1976 to 1978. The likeness of Abraham Lincoln, subject of Professor Dellinger's narrative, endures on the humble penny, symbolic of humility, wisdom, and justice. In short, it is a national symbol of Faulkner's verities of the heart: "… courage and honor and hope and pride and compassion and pity and sacrifice …[.]" *See William Faulkner Banquet Speech*, Novel Prize in Literature 1949, https://www.nobelprize.org/prizes/literature/1949/faulkner/speech/. Alas, the humble Lincoln cent is passing into nothingness, by executive order, not unlike the virtues it calls to mind which have sadly too often been replaced with crude calumny and self-serving, grasping anti-virtues.

the standards required in these proceedings. The expert analysis necessary to address the issue did not appear until late in the expert discovery period, and the delay diminished both the clarity and reliability of the record. Reports in this posture should not require judicial prompting to address the central causation question, nor should the Court be left to wonder whether any expert opinion may be trusted when all have overlooked the same essential fact. Since the Court does not regard the arachnoiditis evidence as a new opinion, the four-factor test does not control the outcome, and exclusion is not warranted.

To restore the integrity of the record and to ensure that this case proceeds on a sound footing, the Court will reopen discovery on this narrow issue. The parties shall submit amended expert reports that directly address the arachnoiditis issues, their significance, and their relationship to Mr. Ellis' injuries. Should amendments to the pleadings be necessary to incorporate these matters, the Court will permit them. In short, the Court expects focused, complete, and thoroughly reasoned submissions.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff Andy Ellis, Jr.'s appeal [374]. The Magistrate Judge's October 30, 2025 Order [361] is REVERSED to the extent it strikes Mr. Ellis' rebuttal and supplemental expert designations. Mr. Ellis' Motions to Stay [377], [381] are DENIED. His Motion for Oral Argument [378] is DENIED as unnecessary. Defendant Dr. Vecchione's second Motion to Strike [382] is DENIED as moot. Lastly, Defendants Medtronic, Inc., and Jonathan Bennet's Motion for Leave to Exceed Page Limit [380] is DENIED as moot.

The Court further orders that discovery is REOPENED. The parties shall submit amended expert reports that directly address the arachnoiditis issues and their causal significance. The Magistrate Judge shall issue a separate order setting revised deadlines.

SO ORDERED, this the 9th day of December, 2025.

                                                 /s/Michael P. Mills
                                                 UNITED STATES DISTRICT JUDGE
                                                 NORTHERN DISTRICT OF MISSISSIPPI